UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cr-00024-MOC-DLH

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **KENDRICK JEREL LATTIMORE,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on Defendant's Motion to Suppress (#11). The court held a hearing on the motion on July 8, 2015. Having considered the motion, the pleadings, and the credible testimony offered at the hearing, the court enters the following findings, conclusion, and Order.

**FINDINGS AND CONCLUSIONS**

**I.   FACTUAL BACKGROUND**

In considering the facts underlying the claims for Defendant's motion, the court notes at the outset that it heard sequestered testimony from two witnesses at the hearing: 1) Sergeant Chadd Murray, Rutherford County Sheriff's Office ("RCSO"); and 2) Detective Jamie Dunn, RCSO. The court finds each of their testimony to be credible. The relevant facts that gave rise to Defendant's motion are as follows.

On October 28, 2014, Sergeant Murray, Detective Dunn, and Detective James Mode, RSCO, were conducting surveillance at a Spindale, NC house that a tipster had indicated was a source of drug activity. Based on Sergeant Murray's testimony during the hearing, they arrived near the home at approximately 3:45 P.M. in a white unmarked Ford F-150 Crew Cab that was equipped

1

with blue lights and a radio for communication. The detectives observed a white Crown Victoria parked in front of the residence, and parked approximately 50 yards away to maintain surveillance. From their vantage point they observed a black male in the passenger seat of the Crown Victoria.

Shortly after arriving, the detectives witnessed the aforementioned black male enter the suspect house. He stayed for approximately one minute before leaving with another black male, later identified as the defendant. The individual who had first been observed in the passenger seat this time entered the Crown Victoria as the driver while the defendant sat in the passenger seat. The Crown Victoria left the scene, and passed by the officers. Sergeant Murray, driving his unmarked truck, left the surveillance position and began following the Crown Victoria. The detectives called in the license tag number displayed on the Crown Victoria. Communications returned information that both the registration on the car and the car's inspection were expired.

The detectives did not immediately initiate a traffic stop because of the high level of traffic in the area. Instead, they continued to follow the Crown Victoria until it entered Rock Road. Sergeant Murray then attempted to initiate a traffic stop by activating the blue lights on his unmarked truck. The Crown Victoria pulled over in a gravel pull-off for a few seconds after turning left onto Water Works Road, but then accelerated, turning onto Old U.S. Highway 221.

Sergeant Murray and the other two detectives in his truck, Dunn and Mode, pursued the Crown Victoria as it reached speeds of 75-80 miles per hour. During the pursuit all three detectives saw the defendant, sitting in the Crown Victoria's passenger seat, extend his arm out of the passenger window and throw a dark-colored object. They noted the address of the house closest to where the object fell and continued the pursuit, which ended at the intersection of the Old U.S. Highway 221 and new Highway 221. The Crown Victoria was blocked by a vehicle at

that intersection and forced to stop, with the detectives never having lost visual contact during the entirety of the encounter.

The driver, William Lee Cash, was arrested on violations related to the chase, including speeding to elude arrest, driving while license revoked, and other charges. The defendant was removed from the passenger seat and detained for up to fifteen minutes while Detective Dunn was driven back to the spot where they had seen the object thrown, which was no more than three-quarters of a mile from the stop. After looking through the brush and growth for approximately one minute Detective Dunn found a Crown Royal bag that contained a Kahr .40 caliber semi- automatic pistol, suspected crack cocaine, and suspected marijuana. The pistol was loaded with one bullet in the chamber and five in the magazine.

Defendant was arrested on state charges related to these items. On the way to the jail, the credible evidence presented indicated that he spontaneously uttered to Detective Dunn that Defendant had thrown the bag, everything in it was his, and he did not want the driver charged with it as well.

## II. MOTION TO SUPPRESS (DEFENDANT'S STATEMENTS)

### A. Defendant's Contentions

Defendant moves the court to suppress the evidence in this case, arguing that Defendant's constitutional rights under the Fourth and Fifth Amendment have been violated. First, Defendant contends that the police stop where the incriminating evidence was found cannot stand, as it violated his protection against unwarranted search and seizure under the Fourth Amendment of the United States Constitution. Defendant points out that neither he nor the driver were observed committing any criminal acts. Both came out of a house that the police believed may have been the locus of drug activity, though the sergeant relaying the tip was uncertain of the exact house. There is

no indication in the discovery that the house or its inhabitants were involved in drug activity. No one identified either Mr. Cash or Mr. Lattimore as buyers or sellers of drugs. There was no reason to make any contact with the occupants of the Crown Victoria, and it was only after the decision was made to follow the car did the police attempt to find a reason to stop the car. As a result, Defendant argues that the police stop was unreasonable and therefore violated his Fourth Amendment rights.

Second, Defendant argues his statements made while in transit to prison were taken while he was in custody, post-arrest. Since he had not been informed of his Miranda rights, Defendant argues that his Fifth Amendment rights were violated, and consequently those statements should not be allowed into evidence. Further, Defendant argues that even if he had been properly informed of his Miranda rights, such statements are tainted by the illegal seizure and should be barred from the introduction into evidence at trial.

**B. Discussion**

The court will first consider Defendant's contention that his Fourth Amendment rights were violated. The Fourth Amendment to the U.S. Constitution governs all searches and seizures conducted by government agents, and requires that every search or seizure by the government be reasonable. U.S. Const. amend. IV. A person is "seized" by the police and thus entitled to challenge the government's action under the Fourth Amendment when an officer, by means of physical force or show of authority, terminates or restrains the person's freedom of movement through means intentionally applied.

In general, searches and seizures are unreasonable unless based on probable cause and executed pursuant to a warrant. See Katz v. United States, 389 U.S. 347, 357 (1967) and Carroll v. United States, 267 U.S. 132, 155-156 (1925). Facts supporting probable cause may come from several sources, including personal observations of police officers. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (probable cause for warrantless search of cars because officers observed

first suspect putting drugs in trunk of car and second suspect acting in a way that suggested drugs were in trunk). In Brendlin v. California, 551 U.S. 249 (2007), the Supreme Court held that a passenger in a car is seized and is therefore entitled to challenge the stop. But an ordinary traffic stop is justified when an officer has probable cause to believe a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 809-10 (1996) Alternately, reasonable suspicion of unlawful conduct, based on specific and articulable facts, is sufficient. United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968). Operating a vehicle with an expired tag and/or inspection is a violation of North Carolina law. See N.C.G.S. §§ 20-111 and 138.8.

Here, the court finds the police stop of Defendant was appropriate. They monitored a location suspected to be home to drug activity, followed a car leaving said location, and shortly thereafter discovered that the car's tags and inspection were both expired. As a result, the police were justified in initiating a stop to cite the driver for his violations. The high-speed chase Defendant describes only began after the driver attempted to elude the police. During this chase, Detective Dunn observed the passenger throw a bag from the car—which was itself an offense, to wit, littering—and, upon recovery, discovered the contraband materials within. Based on these circumstances, stopping and briefly detaining the driver and passenger was entirely justified. As a result, the court finds no violation of Defendant's Fourth Amendment rights by the police in this matter.

As to Defendant's Fifth Amendment claim, the Fifth Amendment to the United States Constitution guarantees that "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V. Pursuant to this protection against compelled self-incrimination, "[a] confession made during a custodial interrogation will be

5

suppressed unless police advise the defendant of his [Miranda rights], and the defendant knowingly, intelligently, and voluntarily waives those rights." United States v. Holmes, 670 F.3d 586, 591 (4th Cir. 2012) (citations omitted). Prior to any custodial questioning, the suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Statements elicited in noncompliance with this rule may not be admitted as part of the prosecution's case in chief. Stansbury v. California, 511 U.S. 318, 322 (1994). However, Miranda warnings are only necessary "where there has been such a restriction on a person's freedom as to render him 'in custody.'" Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam). Even when one is arrested, there is no requirement of giving Miranda warnings, unless police engage the defendant in questioning. Put another way, there is no infringement on the suspect's Fifth Amendment rights absent custodial interrogation. United States v. Hornsby, 666 F.3d 296, 309 (4th Cir. 2012) (citing Edwards v. Arizona, 451 U.S. 477, 481–82, 486 (1981)).

As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. United States v. Dickerson, 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove by a preponderance of the evidence that the challenged evidence is admissible. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Here, the court agrees with the government that Defendant's challenged statement was a spontaneous utterance made in transit to the jail without questioning by the officers, and was thus not made in the context of a custodial interrogation. Consequently, the court finds that officers present were not required to read him his Miranda rights. See United

6

States v. Rhodes, 779 F.2d 1019, 1032 (4th Cir. 1985) ("Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers") (internal citations and quotations omitted). As a result, the court finds no violation of Defendant's rights under the Fifth Amendment.

### III. CONCLUSION

For the reasons explained herein, the court finds that the government's actions in this instance did not violate any of Defendant's constitutional rights and were entirely within the boundaries of law. The statement obtained from Defendant on October 28, 2014, as well as the evidence seized in connection with the events of that day, will not be suppressed. The court will therefore deny Defendant's motion.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Suppress (#11) is **DENIED**.

Signed: July 13, 2015

Max O. Cogburn Jr
United States District Judge